# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

Amy Larimer,

      **Plaintiff,**

v.                                            Case No. 17-cv-2110-JWL

U.S. Bank National Association,

      **Defendants.**

## MEMORANDUM & ORDER

Plaintiff Amy Larimer filed this lawsuit against her former employer asserting claims of disability discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"), *as amended by* ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553, 42 U.S.C. § 12101 et seq., and claims of interference and retaliation in violation of the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq. This matter is presently before the court on defendant's motion for summary judgment on all claims (doc. 29). As explained below, the motion is granted in part and denied in part. Specifically, the motion is granted as to plaintiff's FMLA claims and is denied as to plaintiff's ADA claims.

## I.    Facts

The following facts are uncontroverted, stipulated in the pretrial order, or related in the light most favorable to plaintiff as the nonmoving party. Plaintiff Amy Larimer began her employment with defendant U.S. Bank National Association in March 2004. Beginning in April 2010, plaintiff began working as a Customer Service Manager in defendant's Overland Park,

Kansas contact center. With the exception of a period of time between June 2012 and June 2014 when plaintiff worked as a recruiter in the Overland Park contact center, plaintiff remained employed as a Customer Service Manager in Overland Park until the termination of her employment in September 2015. From January 2015 through the end of her employment, plaintiff reported to Jodi Shireman, defendant's Regional Service Manager. It is undisputed, however, that plaintiff routinely communicated with Ms. Shireman about both personal and work-related issues as early as August 2014. Ms. Shireman, in turn, reported to Jeremiah Allen, the Site Director. At all pertinent times, Stephanie Gandia was the Human Resources business partner supporting the Overland Park contact center.

Beginning in December 2014, plaintiff began discussing concerns about her health with Ms. Shireman. She advised Ms. Shireman that she had been diagnosed with hyperthyroidism in December and plaintiff continued to discuss her health problems with Ms. Shireman into early 2015. Plaintiff advised Ms. Shireman that her doctors were exploring the possibility that plaintiff had fibromyalgia and that she was continuing to experience various symptoms such as pain, swelling and fatigue. Ultimately, plaintiff was diagnosed with fibromyalgia in July 2015 and she advised Ms. Shireman of that diagnosis at that time. Throughout this time period, plaintiff asked for limited time off to attend doctors' appointments and for days when she was feeling unwell. Plaintiff's evidence suggests that Ms. Shireman knew that plaintiff's requests were related to her ongoing health problems, including her fibromyalgia and symptoms stemming from that condition. The record is devoid as to the specific number of days that plaintiff requested off, but the parties agree that plaintiff's requests were limited in number. It is undisputed that defendant never denied any of plaintiff's requests for time off. It is also undisputed that plaintiff never asked

to use FMLA leave for those days off; never filled out any FMLA paperwork; never contacted Human Resources about taking FMLA leave; and never contacted defendant's FMLA administrator. Rather, when she first approached Ms. Shireman about the need for occasional days off, plaintiff suggested that she would simply use her vacation time or "comp" time, and Ms. Shireman agreed that plaintiff's approach was acceptable. Other than taking limited time away from work, plaintiff did not need or request any accommodations to perform her job.

On August 3, 2015, less than one month after she was diagnosed with fibromyalgia and advised Ms. Shireman of that diagnosis, Ms. Shireman placed plaintiff on a Performance Improvement Plan ("PIP"). The record reflects that plaintiff had never before been disciplined or coached regarding her performance. In fact, her most recent performance review reflected a "highly effective" overall rating. In any event, in the August 3, 2015 PIP, Ms. Shireman identified 6 "questionable situations" that had allegedly occurred over the prior six-month period, beginning in January 2015. According to the text of the PIP, the sixth incident was "severe enough to lead to this discipline." The sixth incident is described in the PIP as follows:

> July 28—after conducting an attendance audit, another manager questioned the likelihood of one of Amy's bankers [sic] attendance availability. Pulling the detail of the audit, there were discrepancies in reporting calculations found as well as the total point value from 2014 not used in the overall point value. This discrepancy was sufficient enough that the banker should have been termed some time ago as well as, if having been properly placed on a final or other accountability, would not have made incentive; a significant financial negligence. These findings were inconsistent with the findings in the rest of the site and put the site at risk.

The first five incidents involved various issues, including plaintiff's failure to attend a certain meeting that she was selected to attend and her failure to notify Mr. Allen that she would be absent; a banker who, at the time of termination, was paid all available time, instead of just accrued

3

time, causing the banker to owe defendant in excess of $1300 (the PIP does not explain plaintiff's involvement in or responsibility for this incident); and plaintiff's decision to issue a banker a "stern verbal warning" instead of a written warning based on the banker's failure to read all required disclosures during customer calls.

Defendant's evidence suggests that both Ms. Shireman and Ms. Gandia believed that the sixth incident described in the PIP potentially constituted a violation of defendant's policy strictly prohibiting incentive gaming. Under that policy, employees are prohibited from manipulating records, opening bogus accounts, slamming products, falsifying applications, or skewing results in any way for the benefit of themselves or other employees. In other words, the policy prohibits employees from doing things to unfairly skew their sales results for the purpose of earning incentives. Ms. Shireman testified that she issued the PIP in part because she perceived that plaintiff was gaming the incentive program. It is undisputed that plaintiff's incentives were tied, at least in part, to the incentives earned by her team.

After plaintiff received the PIP, she issued an attendance warning to the banker described in the sixth incident of her PIP and then left for a previously scheduled vacation. After receiving the warning, the banker raised his voice at Ms. Shireman and caused a "distraction" in the workplace, resulting in his termination. According to defendant, Ms. Shireman and Ms. Gandia believed that if plaintiff had been appropriately "handling" that banker all along, the "blowup" would not have occurred. Shortly thereafter, plaintiff failed to identify a mistake with an employee's standard weekly hours showing correctly in "the system," potentially resulting in that employee's incentive goal being lower (and thus, more easily attainable) than it should have been. According to defendant, Ms. Shireman, Ms. Gandia and Mr. Allen decided to terminate plaintiff's

4

employment on September 22, 2015 as a result of the incidents identified in the PIP; the issue with the banker disrupting the workplace; and plaintiff's failure to identify the mistake with her employee's standard weekly hours.

Additional facts will be provided as they relate to the specific arguments raised by the parties in their submissions.

## II.  Summary Judgment Standard

"Summary judgment is appropriate if the pleadings, depositions, other discovery materials, and affidavits demonstrate the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Water Pik, Inc. v. Med–Systems, Inc.*, 726 F.3d 1136, 1143 (10th Cir. 2013) (quotation omitted); *see* Fed. R. Civ. P. 56(a). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Water Pik, Inc.*, 726 F.3d at 1143 (quotation omitted). "The nonmoving party is entitled to all reasonable inferences from the record; but if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Id.* at 1143-44.

## III.  Disability Discrimination and Retaliation Claims

The ADAAA prohibits employers from discriminating against "a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). The statute's retaliation provision provides that "[n]o person shall discriminate against any individual because such individual has opposed any

act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). In the pretrial order, plaintiff contends that defendant violated both provisions when it terminated her employment. Specifically, plaintiff alleges that defendant terminated plaintiff's employment based on plaintiff's fibromyalgia and hyperthyroidism. Plaintiff further asserts that defendant terminated plaintiff's employment in retaliation for plaintiff's periodic requests for reasonable accommodations (limited time off to attend doctors' appointments) for her fibromyalgia and hyperthyroidism.

Because plaintiff concedes that her claims rely on circumstantial evidence, the claims are analyzed under the framework articulated in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Dewitt v. Southwestern Bell Tel. Co.*, 845 F.3d 1299, 1306 (10th Cir. 2017) (ADA discrimination claim); *Foster v. Mountain Coal Co.*, 830 F.3d 1178, 1186 (10th Cir. 2016) (ADA retaliation claim). Thus, plaintiff must first establish a prima facie case. *Dewitt*, 845 F.3d at 1307; *Foster*, 830 F.3d at 1186. If plaintiff establishes a prima facie case, defendant must offer a legitimate reason for the termination of plaintiff's employment. *See Dewitt,* 845 F.3d at 1307; *Foster*, 830 F.3d at 1186. If defendant can do so, the burden shifts back to plaintiff to show that there is at least a genuine issue of material fact as to whether defendant's proffered legitimate reason is pretextual. *Dewitt*, 845 F.3d at 1307; *Foster*, 830 F.3d at 1186.

In its motion for summary judgment, defendant contends that plaintiff cannot establish a prima facie case of discrimination or retaliation and, in any event, cannot establish that defendant's proffered reasons for terminating plaintiff's employment are pretextual. As will be

6

explained, both of plaintiff's disability claims must be tried to a jury in light of material factual disputes underlying each of the issues challenged by defendant.

A.  *Prima Facie Case*

To establish a prima facie case of disability discrimination under the ADAAA, plaintiff must present evidence that (1) she is disabled within the meaning of the ADAAA; (2) she is qualified to perform the essential functions of her job with or without accommodation; and (3) she was terminated because of her disability. *Id.* at 1308. Defendant asserts that summary judgment in its favor is required on plaintiff's discrimination claim because plaintiff cannot demonstrate that she is disabled with the meaning of the ADAAA. Congress has provided three statutory definitions for "disability" under the ADAAA: A plaintiff may show (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. *Adair v. City of Muskogee*, 823 F.3d 1297, 1305 (10th Cir. 2016) (quoting 42 U.S.C. § 12102(1)). In the pretrial order, plaintiff contends that defendant discriminated against her based on an actual disability under subsection (A).

To demonstrate an actual disability under subsection (A), plaintiff must have a physical or mental impairment that substantially limits one or more major life activities. *See* 42 U.S.C. § 12102(1)(A). Here, plaintiff contends that her fibromyalgia and hyperthyroidism substantially limit her ability to walk. *See EEOC v. BNSF Railway Co.*, 853 F.3d 1150, 1156 (10th Cir. 2017) (walking is a major life activity). To show that her fibromyalgia and hyperthyroidism substantially limit her ability to walk, plaintiff must show that she is substantially limited in her

ability to walk "as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity to be considered substantially limiting. *Id*. The determination of whether an impairment substantially limits a major life activity requires an "individual assessment," *id*. § 1630.2(j)(1)(iv), and may take into consideration facts such as the difficulty, effort or time required to perform the major life activity; pain experienced when performing a major life activity; and/or the way the impairment affects the operation of a major bodily function. *Id.* § 1630.2(j)(4)(ii). The pertinent regulations provide that the phrase "substantially limits" is to be construed broadly in favor of coverage and is not meant to be a demanding standard. *See Crowell v. Denver Health & Hosp. Authority*, 572 Fed. Appx. 650, 658 (10th Cir. July 23, 2014) (citing 29 C.F.R. § 1630.2(j)(1)(i)); *see also* 29 C.F.R. 1630.2(j)(1)(iii) (threshold "substantially limits" issue should not demand extensive analysis; emphasis in ADA cases should be squarely on the merits and not initial coverage question).

Bearing in mind this "less demanding" standard and the Tenth Circuit's admonition that whether an impairment substantially limits a major life activity is ordinarily a question of fact for the jury, *see Carter v. Pathfinder Energy Servs., Inc*., 662 F.3d 1134, 1142 (10th Cir. 2011), the court concludes that plaintiff's evidence on this issue is sufficient to permit a jury to conclude that plaintiff was substantially limited in her ability to walk at the pertinent time. In support of her argument that her fibromyalgia and hyperthyroidism substantially limit her ability to walk, plaintiff points to her deposition testimony in which she testified that she was diagnosed with hyperthyroidism in December 2014 and that she was diagnosed with fibromyalgia several months later. While a medical diagnosis, standing alone, is not sufficient to create a material fact as to

8

whether a plaintiff is disabled, plaintiff further testified that her fibromyalgia resulted in "pain and swelling in [her] feet so bad that [she] could barely walk without crying." Reviewing her testimony in the context of the specific line of questioning asked by counsel, it is reasonable to infer that plaintiff was experiencing such pain at or near the time of the termination of her employment. While defendant contends that this testimony does not reflect the length of time or distance that plaintiff could walk without pain or swelling and does not reflect any "restrictions" on plaintiff's ability to walk, the implementing regulations do not require that level of specificity with respect to the "substantially limiting" analysis. Plaintiff's testimony that the pain and swelling in her feet was "so bad" that she "could barely walk without crying" is sufficient to suggest that plaintiff's ability to walk, when compared to most people in the general population, was substantially limited. Because defendant does not otherwise challenge plaintiff's prima facie case, plaintiff's discrimination claim must be resolved at the pretext stage.

The court turns, then, to plaintiff's retaliation claim. To establish a prima facie case of ADA retaliation, plaintiff must prove that she engaged in protected activity; that she was subjected to an adverse employment action; and that there was a causal connection between the protected activity and the adverse employment action. *See Foster*, 830 F.3d at 1186-87. Defendant does not contest that plaintiff was subjected to an adverse employment action—the termination of her employment—but disputes that plaintiff engaged in protected activity and that any protected activity was connected to plaintiff's termination.[1]

---

[1] Defendant also contends that summary judgment is appropriate because plaintiff was not disabled within the meaning of the ADAAA. But to prevail on an ADA retaliation claim, a plaintiff need not show that she suffers from an actual disability. *See Foster*, 830 F.3d at 1186. Rather, a plaintiff need only show that she had a reasonable, good-faith belief that she was disabled. *Id.*

According to defendant, although plaintiff periodically requested time off work for doctors' appointments, those requests did not constitute "protected activity" because they did not adequately convey that plaintiff was seeking an accommodation for a "disability." *See id*. at 1187-88 (reviewing what a plaintiff must show when alleging as "protected activity" the act of requesting an accommodation). But the evidence in the record is sufficient to permit a reasonable jury to conclude that plaintiff's requests adequately conveyed that plaintiff was seeking occasional time off for doctors' appointments relating to a chronic medical condition. Plaintiff testified that she advised Ms. Shireman in December 2014 that she had been diagnosed with hyperthyroidism and that she advised Ms. Shireman in early 2015 that she had been referred to a rheumatologist to explore the possibility that plaintiff also had fibromyalgia. Plaintiff testified that she "sometimes" discussed with Ms. Shireman "what the doctors were thinking or finding" and details about her medical treatment as various doctors attempted to identify a cause for plaintiff's symptoms of pain, swelling and fatigue. Plaintiff testified that she advised Ms. Shireman that she was diagnosed with fibromyalgia at the time of her diagnosis. Plaintiff's testimony certainly permits a reasonable inference that Ms. Shireman recognized that plaintiff was seeking time off to address symptoms relating to fibromyalgia and hyperthyroidism. A reasonable jury, then, could conclude that plaintiff, when she requested time off for doctors' appointments or illness relating to her ongoing medical condition, was engaged in protected activity for purposes of the ADA.

---

This argument, then, is rejected. Defendant also suggests that plaintiff's claim necessarily fails because defendant undisputedly granted each of plaintiff's requests for time off. Defendant cites no authority for this suggestion. Moreover, the key issue for plaintiff's retaliation claim here is not whether defendant ultimately granted plaintiff's requests for time off but whether defendant reacted to those requests (and plaintiff's taking leave) by terminating plaintiff's employment.

10

Defendant's suggestion that plaintiff was required to convey the need for an accommodation for a "disability" (as opposed to a medical condition) is rejected. *See id.* at 1190 (jury could find that employee's request to attend doctor's appointment to schedule surgery relating to neck injury adequately informed employer of the need for an adjustment due to a medical condition).

Defendant next contends that plaintiff cannot establish the requisite causal connection between any protected activity and her termination because more than 10 months passed between plaintiff's first discussion with Ms. Shireman in December 2014 about needing time off and the termination of plaintiff's employment. But defendant has made no effort to marshal the evidence concerning the frequency of plaintiff's requests; whether those requests increased over time; or whether any requests were made at or near the time of plaintiff's termination. In the absence of any argument or evidence concerning those issues, defendant's mere assertion that 10 months passed between plaintiff's first request for time off and her termination is not sufficient to show the absence of a disputed issue on causation. Summary judgment is not appropriate on this issue. Like plaintiff's discrimination claim, then, plaintiff's retaliation claim must be resolved at the pretext stage.

B.   *Pretext*

Because plaintiff has satisfied her burden of establishing a prima facie case of discrimination and retaliation, the court turns to whether defendant has met its burden to articulate a legitimate reason for the employment decision. "This burden is one of production, not persuasion; it can involve no credibility assessment." *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1149 (10th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530

U.S. 133, 142 (2000)). The Tenth Circuit has characterized this burden as "exceedingly light," and the court finds that defendant has carried it here. *See id.* According to defendant, it terminated plaintiff's employment based on the incidents identified in the PIP; the issue with the banker disrupting the workplace; and plaintiff's failure to identify the mistake with her employee's standard weekly hours. The burden of proof, then, shifts back to plaintiff to show that defendant's proffered reasons are pretextual.

Evidence of pretext "may take a variety of forms," including evidence tending to show "that the defendant's stated reason for the adverse employment action was false" and evidence tending to show "that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances." *Dewitt v. Southwestern Bell Tel. Co.*, 845 F.3d 1299, 1307 (10th Cir. 2017) (citations and quotations omitted). A plaintiff may also show pretext with evidence that the defendant had "shifted rationales" or that it had treated similarly situated employees differently. *Crowe v. ADT Servs., Inc.*, 649 F.3d 1189, 1197 (10th Cir. 2011). In essence, a plaintiff shows pretext by presenting evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Dewitt*, 845 F.3d at 1307 (citations and quotations omitted).

Plaintiff's evidence, viewed in combination and in the light most favorable to her, is sufficient to cast doubt on defendant's proffered reasons. First, the timing of the PIP is at least somewhat suspicious in that it was issued less than one month after plaintiff's fibromyalgia diagnosis; plaintiff had never been notified of any performance problems prior to the PIP; and the

PIP relied on incidents as far back as January 2015 despite the fact that defendant never addressed these incidents contemporaneously with plaintiff. Second, plaintiff has called into question several of the specific incidents in the PIP. For example, plaintiff's evidence shows that no one expected her to attend the meeting that she missed because Ms. Shireman had pre-approved plaintiff to take that day off. And plaintiff, prior to issuing a verbal warning to the banker who had failed to read the required disclosures, discussed with Ms. Shireman the appropriate discipline to issue to the banker who failed to read the required disclosures. According to plaintiff's testimony, Ms. Shireman agreed that, under the circumstances, including the fact that the banker was new to plaintiff's team, a stern verbal warning was sufficient. This evidence, then, tends to show that defendant, contrary to its assertions, was not concerned about plaintiff's failure to attend the meeting or her issuance of the verbal warning and that, in fact, defendant had authorized plaintiff's conduct. More significantly, plaintiff has cast doubt on the sixth incident identified in the PIP. Plaintiff's testimony suggests that plaintiff herself was the individual who initiated and conducted the attendance audit, discovered the discrepancy and brought it to the attention of her supervisors. That testimony, then, certainly suggests that plaintiff was not engaged in an effort to "game" the incentive system. Moreover, plaintiff's audit uncovered more egregious discrepancies from other bankers whose managers were not disciplined for it.

In addition, the record reflects some inconsistency among defendant's managers concerning plaintiff's failure to identify the mistake with her employee's standard weekly hours. According to defendant, plaintiff was terminated for this incident because it represented another example of plaintiff's gaming the incentive system. Indeed, Ms. Shireman testified as much. But Ms. Gandia testified that, in her mind, the incident was simply another "miss on [plaintiff's] part

13

in record keeping" rather than an intentional act done to increase incentives. Even defendant's evidence, then, casts doubt on whether defendant genuinely believed that plaintiff was gaming the incentive system. Finally, to the extent defendant relies on the incident in which the banker created a disruption in the workplace, a reasonable jury could conclude that defendant did not honestly believe that plaintiff could have prevented the banker's conduct and that defendant was simply looking for additional reasons to bolster its decision to terminate plaintiff's employment.

For the foregoing reasons, plaintiff has established a genuine issue of material fact as to whether defendant terminated her employment based on her disability and/or in retaliation for plaintiff's accommodation requests. Summary judgment is denied on these claims.

**IV.   FMLA Claims**

The FMLA allows a qualified employee to take up to twelve weeks of leave for a "serious health condition." *Dewitt v. Southwestern Bell Tel. Co*., 845 F.3d 1299, 1318 (10th Cir. 2017) (citing 29 U.S.C. § 2612(a)(1)(D)). The FMLA provides that an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." *Sabourin v. University of Utah*, 676 F.3d 950, 957 (10th Cir. 2012) (quoting 29 U.S.C. § 2615(a)(1)). An employer's violation of this provision gives rise to an "interference" claim under the FMLA. *See Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1226 (10th Cir. 2012). The FMLA also forbids an employer from retaliating against an employee for taking FMLA leave. *Smothers v. Solvay Chem., Inc*., 740 F.3d 530, 539–40 (10th Cir. 2014) (citing 29 U.S.C. § 2615(a)(2)). An employer's violation of this provision gives rise to a retaliation claim under the FMLA. *Id*. at 540. Plaintiff asserts both claims in the pretrial order and defendant moves for

14

summary judgment on both claims. Because no reasonable factfinder could find interference with or retaliation for plaintiff's exercise of her FMLA rights, summary judgment is granted on both claims.[2]

*A.     Interference Theory*

Plaintiff claims that defendant interfered with her FMLA rights by discouraging her from applying for and using FMLA leave. To prevail on her claim, plaintiff must show an entitlement to leave; an adverse action that interfered with her right to take leave; and a relationship between that action and the exercise of FMLA rights. *See Dalpiaz v. Carbon County*, 760 F.3d 1126, 1132 (10th Cir. 2014). To satisfy the second element of an interference claim—adverse action interfering with the right to take FMLA leave—plaintiff must show that she was prevented from taking the full 12 weeks of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave. *Id.* (citing *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007)). Thus, an interference claim arises when an adverse employment decision is made before the employee has been allowed to take FMLA leave or while the employee is still on FMLA leave. *Id.*

Defendant contends that summary judgment is appropriate on plaintiff's interference claim because plaintiff cannot establish the second element of her claim. The court agrees. The record reflects that defendant never denied plaintiff permission to take FMLA leave. In fact, it is

---

[2] As a threshold matter, defendant moves for summary judgment on both FMLA claims based on plaintiff's inability to establish that she suffered from a serious health condition that rendered her unable to perform the functions of her position. *See* 29 U.S.C. § 2612(a)(1)(D). The court declines to address this argument because summary judgment is clearly warranted on other grounds.

15

undisputed that plaintiff never requested to take FMLA leave, never filled out any FMLA paperwork, never contacted Human Resources about taking FMLA leave and never contacted defendant's FMLA administrator. In response to defendant's motion, plaintiff urges only that Ms. Shireman "expressly discouraged her from using FMLA leave." The record does not support plaintiff's allegation. When asked by counsel whether plaintiff discussed the FMLA with Ms. Shireman, plaintiff testified:

> I believe I had mentioned the fact that I said I can, you know, file it if I need to at one point, and she said—I said "But I don't need a lot of time, I can just use my vacation or comp time." She said, "Yeah, that's fine," so that's why we went with that.

The only other testimony referenced by plaintiff is plaintiff's testimony that Ms. Shireman told her that she "could use . . . vacation and comp time for doctors' appointments and things of that nature" and, because she received all the time off she needed, plaintiff did not see a reason to discuss the issue with human resources. There is no evidence in the record, then, from which a reasonable jury could infer that Ms. Shireman discouraged plaintiff from using FMLA leave or in any way chilled plaintiff from seeking FMLA benefits. Finally, because it is undisputed that plaintiff received paid leave (in the form of vacation time or comp time) each time she requested it, plaintiff has not shown that she was prejudiced in any way by defendant's alleged interference with her FMLA rights. For this reason, too, summary judgment is appropriate. *See Nebeker v. National Auto Plaza*, 643 Fed. Appx. 817, 823-24 (10th Cir. Apr. 1, 2016) (summary judgment affirmed on FMLA interference claim where plaintiff alleged that employer discouraged her from taking FMLA leave, but she received a regular salary and her pay was never docked each time she took leave; FMLA provides no relief for interference unless plaintiff has been prejudiced by

16

violation). In short, the court grants summary judgment in favor of defendant on plaintiff's interference claim.

*B.     Retaliation Theory*

Plaintiff claims that defendant retaliated against plaintiff for attempting to exercise her FMLA rights by terminating her employment. To establish a prima facie case with respect to this claim, plaintiff must first show that she engaged in protected activity by taking FMLA-protected leave; that defendant took a materially adverse action against her; and that the circumstances permit an inference of causal connection between the two events. *Smothers v. Solvay Chem., Inc.*, 740 F.3d 530, 540 (10th Cir. 2014). Defendant contends that summary judgment is appropriate because plaintiff cannot dispute—and, in fact, concedes—that she never engaged in protected activity. The court must agree. Even viewed in the light most favorable to plaintiff, no jury could conclude that plaintiff took FMLA leave, requested or applied for FMLA leave or even explored the possibility of taking FMLA leave.[3] Plaintiff advised Ms. Shireman that she would use her vacation and comp time for doctors' appointments instead of filing for FMLA leave and Ms. Shireman agreed to that approach. The record is devoid of evidence that plaintiff engaged in protected activity for purposes of her FMLA retaliation claim. Summary judgment is granted on this claim.

---

[3] The Circuit has held, albeit in an unpublished decision, that the mere use of sick leave or other paid leave does not implicate the FMLA. In other words, an employee does not engage in protected activity simply by using sick leave, even if the employee would have qualified for leave under the FMLA. *See Ney v. City of Hoisington*, 264 Fed. Appx. 678, 682 (10th Cir. Feb. 6, 2008).

17

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. 29) is granted in part and denied in part. It is granted with respect to plaintiff's FMLA claims and is denied with respect to plaintiff's ADA claims.

**IT IS SO ORDERED.**

Dated this 17th day of July, 2018, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge